UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| BRANDIE M. ROBERTS, | ) | |
| | ) | |
| Plaintiff,[1] | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-04114-SLD-RLH |
| | ) | |
| OFFICER JASON HAYES, OFFICER | ) | |
| EDDIE SHAMBLIN, OFFICER OWENS, | ) | |
| ILLINOIS STATE POLICE, JUDGE | ) | |
| ANDREW DOYLE, CITY OF ABINGDON, | ) | |
| DCFS, LISA ZIMMERMAN, MISTY | ) | |
| LAMPLEY, BERG'S TOWING AND | ) | |
| AUTOMOTIVE INC., MARK SHEWRIN, | ) | |
| MAURICE BARRY, BARBARA | ) | |
| BOYNTON SHERWIN, and JOHN DOE 1– | ) | |
| 4, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

The matter comes before the Court for merit review of Plaintiff Brandie M. Roberts's

Second Amended Complaint, ECF No. 14.[2]  Also pending before the Court is Plaintiff's Motion

to Appoint Counsel, ECF No. 19.  For the reasons that follow, the Second Amended Complaint

is DISMISSED IN PART for failure to state a claim and the Motion to Appoint Counsel is

DENIED WITHOUT PREJUDICE.

---

[1] Plaintiff's pleadings purport to assert claims on behalf of Plaintiff's minor child, L.S.  *E.g.*, Second Am. Compl. 1.
ECF No. 14.  A parent may not litigate an action *pro se* on her child's behalf.  *See, e.g.*, *Foster v. Bd. of Educ. of
City of Chi.*, 611 F. App'x 874, 877 (7th Cir. 2015) (collecting cases).  L.S. is DISMISSED WITHOUT
PREJUDICE from this suit.  Plaintiff may not attempt to litigate *pro se* claims properly belonging to L.S.
[2] Plaintiff's document is entitled "Plaintiff's First Amended Complaint for Violation of Civil Rights under 42 U.S.C.
§§ 1983 and State Law Claims," but Plaintiff has already filed a First Amended Complaint.  *See* First Am. Compl.,
ECF No. 4.  The Court refers to the at-issue pleading as the Second Amended Complaint for the sake of clarity.

# BACKGROUND

The Court previously summarized Plaintiff's allegations and presumes familiarity with that summary. *See* Dec. 10, 2024 Order 2–4, ECF No. 11. Plaintiff's allegations generally concern two related matters: (1) an August 27, 2022 traffic stop which resulted in a subsequently vacated conviction for methamphetamine possession; and (2) an ongoing dispute regarding Plaintiff's custody of L.S. *Id.* On August 27, 2022, Officers Jason Hayes and Owens of the Abingdon Police Department conducted a traffic stop of Plaintiff's converted bus, which served as Plaintiff's home. *See* Second Am. Compl. 2–3, 5.[3] "The stop was initiated under the pretext of alleged minor traffic violations, including improper use of registration, lack of insurance, and an unregistered trailer." *Id.* at 3. At some point, Officer Eddie Shamblin of the Illinois State Police ("ISP") joined the traffic stop. *Id.* Shamblin stated to Hayes that he was going to "show [Hayes] a trick," which Plaintiff asserts referred "to using prior no-insurance tickets to justify impoundment." *Id.* The officers then conducted a pretextual inventory search of Plaintiff's bus and found "residue that field-tested positive for methamphetamine, resulting in Plaintiff's arrest" and prosecution. *Id.* at 4. "Plaintiff was unlawfully detained for approximately 5.5 hours during and after the traffic stop." *Id.* Plaintiff's bus was towed by Berg's Towing and Automotive Inc. ("Berg's") as part of the traffic stop. Shamblin was employed by Berg's in addition to his employment with ISP. *Id.*

Judge Andrew Doyle denied Plaintiff's attempt to suppress the residue evidence, leading to Plaintiff's conviction for methamphetamine possession, and he issued an order of protection on behalf of L.S. *Id.* at 5. Both Plaintiff's conviction and the order of protection were reversed on appeal. *People v. Roberts*, 2024 IL App (4th) 230419-U, ¶¶ 1–2 (conviction); *Sherwin v.*

---

[3] Citations to the Second Amended Complaint utilize page numbers because the paragraphs are inconsistently numbered.

*Roberts*, 2023 IL App (4th) 220904-U, ¶ 1 (order of protection). The criminal charges against

Plaintiff were subsequently dismissed by the State. People v. Roberts, 2022CF419, Knox

County, IL,

https://judici.com/courts/cases/case_history.jsp?court=IL048025J&ocl=IL048025J,2022CF419,I

L048025JL2022CF419D1 (last visited Apr. 29, 2025).

  Lisa Zimmerman, an employee of the Illinois Department of Children & Family Services

("DCFS") entered and searched Plaintiff's bus without a warrant or court order while it was

impounded by Berg's. Second Am. Compl. 4–5. Zimmerman took photos of the bus in its post-

search state and used those photos "to support a neglect allegation against Plaintiff." *Id.* Those

photos were not "indicative of Plaintiff's normal living conditions" and demonstrated that Hayes

and Shamblin "had unnecessarily broken many personal items . . . and had left the bus in

disarray." *Id.* at 5. Zimmerman's allegations against Plaintiff, relying at least in part upon those

photos of Plaintiff's bus, resulted in Plaintiff being "indicated"[4] for abuse or neglect, but that

finding "was later vacated during the adjudication appeal process." *Id.* at 5–6. Zimmerman also

threatened to place L.S. in foster care if Plaintiff continued to allege that Zimmerman was a liar.

Zimmerman coerced Plaintiff into taking a drug test in exchange for custody of L.S. *Id.* at 6.

Zimmerman and her supervisor, Misty Lampley, "altered the results" of that drug test. *Id.*

  At Zimmerman's direction, Mark Sherwin, L.S.'s father, withheld L.S. from Plaintiff for

two weeks in September 2022 without a valid court order. *Id.* Sherwin, along with L.S.'s

paternal grandmother, Barbara Boynton-Sherwin, and Sherwin's attorney, Maurice Barry,

conspired to "misuse legal processes, including filing false allegations of abuse and

---

[4] "Indicated" refers to a preliminary finding by DCFS of abuse or neglect. *See, e.g.*, *Sebesta v. Davis*, 878 F.3d 226, 230 (7th Cir. 2017) ("DCFS notified [the plaintiff] that she had been 'indicated' for a 'Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare by Neglect.' In English, this signaled that DCFS's investigation had turned up credible evidence of neglect.").

environmental neglect, to restrict Plaintiff's parental rights." *Id.* Barry acted unethically by ignoring a court order to prioritize Plaintiff's motions, instead prioritizing his own motions "by scheduling hearings only for his own motions," thereby depriving Plaintiff "of the opportunity to prepare and present her case effectively [and] placing her at a severe procedural disadvantage." *Id.* Barry also falsely alleged that L.S. had drugs in his system without any toxicological basis for such an allegation, leading to the extension of an order of protection limiting Plaintiff's contact with L.S. *Id.* Barry engaged in other deceitful conduct, consistent with his two prior one-year-long suspensions from the practice of law. *Id.* at 6–7. Boynton-Sherwin exercised undue control over supervised visitation between L.S. and Plaintiff, took away from L.S. items which Plaintiff had given him, and abused the trust inherent in supervised visitation by using information derived from those visits to create false and defamatory allegations about Plaintiff to DCFS. *Id.* at 7.

DCFS is continuing to pursue a wardship petition regarding L.S., relying upon the previously vacated methamphetamine conviction and 2022 neglect findings. *Id.* at 8. In July 2024, Plaintiff allowed L.S. to walk by himself to a gas station 200 feet from the bus while Plaintiff observed from the bus's window. *Id.* Plaintiff was "indicated" for inadequate supervision due to this incident. *Id.* As part of investigating this issue, an investigator decided to combine this investigation with executing a warrant for Plaintiff's boyfriend's failure to appear (presumably for a court hearing). *Id.* The investigator arrived at Plaintiff's bus accompanied by at least eight officers, "a clear abuse of power and an example of intimidation." *Id.* DCFS's actions are a campaign of "harassment and retaliation for standing up for her constitutional rights, leading to emotional distress and ongoing harm to the parent-child relationship." *Id.* at 9.

As a result of the Court's first merit review, Plaintiff's First Amended Complaint was dismissed in part for failure to state a claim. *See generally* Dec. 10, 2024 Order. She was given leave to amend to address the deficiencies identified by the Court. *Id.* at 15. Plaintiff's Second Amended Complaint fails to address many of these deficiencies, adds Boynton-Sherwin as a new Defendant, and asserts thirty additional claims. *See generally* Second Am. Compl. The Court previously denied Plaintiff's request for counsel, *see* Dec. 10, 2024 Order 12–13, and Plaintiff renews that request, *see generally* Mot. Appoint Counsel.

## DISCUSSION

### I. Motion to Appoint Counsel

#### A. Legal Standard

Under the federal *in forma pauperis* statute, "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). However, "parties to civil litigation have no right to counsel." *Thornhill v. Cox*, 113 F. App'x 179, 181 (7th Cir. 2004). When faced with a request to appoint counsel, the court must determine: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (citing *Farmer v. Haas*, 990 F.2d 319, 321–22 (7th Cir. 1993)). Litigating a case includes "evidence gathering, preparing and responding to motions and other court filings, and trial." *Id.* at 655. In considering whether the difficulty of the case exceeds the plaintiff's capacity to litigate it, the court considers "the plaintiff's literacy, communication skills, educational level, and litigation experience" as well as the plaintiff's "intellectual capacity and psychological history." *See id.* Even if a court grants a

motion to recruit counsel, there is no guarantee it could find one willing to take the appointment—a court cannot require an attorney to accept this case. *See id.* at 653.

### B. Analysis

The Court denied Plaintiff's prior request that the Court attempt to recruit counsel on her behalf, instructing her that future requests must include "documentation of her attempt to obtain counsel and [must] explain why she is not competent to litigate this case herself." Dec. 10, 2024 Order 12–13. Plaintiff's pending request includes an email exchange with one attorney and screenshots of completed intake forms on four law-firm websites. Mot. Appoint Counsel 3–7.[5] She explains that she needs counsel because she is "not legally trained and lack[s] the education, health, and time needed to meet the legal and procedural demands of this litigation" and posits that she is "open to limited scope representation" wherein she would handle "basic filings and communication with the Court" while an attorney would handle "the more complex parts of this case—like discovery, dispositive motions, and trial." *Id.* at 2.

"Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). "The question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant." *Pruitt*, 503 F.3d at 655. As the Court previously noted, Plaintiff's level of education—some college—suggests that she can handle this litigation at this early stage. Dec. 10, 2024 Order 13 (citing *Perez v. Fenoglio*, 792 F.3d 768, 784 (7th Cir. 2015)). Plaintiff's filings thus far have been sufficiently cogent and she has been able to clearly communicate her theories of the case. Moreover, this litigation is still at its earliest stages—no

---

[5] The Motion to Appoint Counsel is unpaginated so the Court uses the page numbers generated by CM/ECF.

Defendant has had to file an answer yet.  Given Plaintiff's abilities as a layperson to communicate her positions and this litigation's procedural posture, Plaintiff's Motion to Appoint Counsel is DENIED WITHOUT PREJUDICE.

## II.    Merit Review

### A.  Legal Standard

A court must dismiss a complaint brought by an individual proceeding IFP if it determines that the complaint "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii); *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015).  The Federal Rule of Civil Procedure 12(b)(6) standard applies when determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii).  *Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017).  Thus, the court takes all well-pleaded allegations as true and views them in the light most favorable to the plaintiff.  *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

If a claim is dismissed, a court may decide whether the plaintiff should be given leave to amend that claim.  Leave to amend should be "freely" given "when justice so requires," Fed. R. Civ. P. 15(a)(2), and a plaintiff ordinarily should be given a second chance to properly plead her claim, *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015).  However, "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile."  *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

### B.  Analysis

As an initial matter, Plaintiff attempts to allege certain claims that the Court previously dismissed with prejudice—those claims may not be reasserted.  In particular, Judge Andrew Doyle is still entitled to absolute judicial immunity, *see* Dec. 10, 2024 Order 6–7, such that the claim asserted against him is again DISMISSED WITH PREJUDICE, *see* Second Am. Compl. 10–12.  DCFS and ISP are still non-suable entities under 42 U.S.C. § 1983, *see* Dec. 10 2024 Order 7–8, such that the many claims asserted against them under § 1983 are also DISMISSED WITH PREJUDICE, *see* Second Am. Compl. 9–25, 50–55.  Plaintiff's other claims can be broadly grouped into three categories: (1) constitutional claims; (2) state law property and contract claims; and (3) state law tort claims.  The Court takes up each category in turn, analyzing issues common to each category or particular Defendants before analyzing specific claims.

### 1.  Constitutional Violations via 42 U.S.C. §§ 1983, 1985

#### a.  State Action

Plaintiff utilizes § 1983 to advance her constitutional claims against various combinations of Defendants.  Second Am. Compl. 9–25, 50–55.  Section 1983 is not a freestanding cause of action for any constitutional violation—it requires that the "person" who committed the violation have acted "under color of" law.  42 U.S.C. § 1983.  While "[p]rivate action can become state action when private actors conspire or are jointly engaged with state actors to deprive a person of constitutional rights," *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009), "mere allegations of joint action or a conspiracy" are insufficient, *Scott v. Univ. of Chi. Med. Ctr.*, 107 F.4th 752, 758 (7th Cir. 2024) (quotation marks omitted).  To plausibly allege that private parties acted under color of state law, a plaintiff must allege that the

private actors and state actors reached an agreement to deny the plaintiff a constitutional right and that the private actors were "willful participant[s] in joint activity with the State or its agents." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (alteration in original) (quotation marks omitted); *see id.* ("For an individual to act under color of law, there must be evidence of a concerted effort between a state actor and that individual."). The Court begins by analyzing whether Plaintiff has sufficiently alleged that some of the private actors—Berg's, Sherwin, and Boynton-Sherwin—engaged in state action.

Starting with Berg's, the Court previously dismissed a Fourth Amendment claim against Berg's for insufficient allegations of state action. *See* Dec. 10, 2024 Order 10 ("A conclusory allegation that Berg's acted in concert with the police officers does not suffice . . . ."). Plaintiff newly alleges that Shamblin was employed by Berg's as well as ISP, and that "[t]his dual role created a conflict of interest and facilitated coordination between law enforcement and Berg's." Second Am. Compl. 4. For her Fourth Amendment claim, Plaintiff again alleges that Berg's "acted in concert with state actors by granting Defendant Zimmerman, a DCFS investigator, unauthorized access to Plaintiff's impounded bus." *Id.* at 9. This dual role might incentivize Shamblin to steer business to Berg's but it does not suggest that Berg's via Shamblin reached any agreement—explicit or implicit—with a state actor to deny Plaintiff of her constitutional rights. Again, Plaintiff fails to allege that Berg's and any state actor "had a meeting of the minds and thus reached an understanding … to deny" Plaintiff "a constitutional right." *Scott*, 107 F.4th at 758 (alteration in original) (quotation marks omitted). The remainder of Plaintiff's constitutional claims against Berg's all hinge on the act of allowing Zimmerman access to Plaintiff's bus. *See* Second Am. Compl. 10–12, 18–20, 22–23. Because none of these § 1983 claims sufficiently allege the existence of an agreement between Berg's and a state actor, these

claims as asserted against Berg's are DISMISSED WITH PREJUDICE.  Dismissal with prejudice is warranted because Plaintiff has already been given a chance to cure this previously identified deficiency and failed to do so.  *See Arreola*, 546 F.3d at 796.

A similar analysis applies to Plaintiff's allegations of state action regarding Sherwin.  The Court previously dismissed a constitutional claim asserted against Sherwin because "Plaintiff's conclusory allegation that he 'acted in concert with DCFS agents' [wa]s insufficient to show that he was acting under color of law."  Dec. 10, 2024 Order 11–12 (quoting First Am. Compl. 5,[6] ECF No. 4).  Plaintiff changes this allegation's wording but not its substance—she now alleges that Sherwin "acting under the direction of Defendant Zimmerman, withheld custody of [L.S.]."  Second Am. Compl. 6.  At most, this allegation would establish that Sherwin and Zimmerman shared a common goal—prevent Plaintiff from having custody over L.S.—but it does not show that they reached an understanding to unlawfully deprive Plaintiff of her right to have custody of L.S.  *See Scott*, 107 F.4th at 758 ("Merely working in parallel toward a common goal is not the same as conspiring together." (quotation marks omitted)).  Sherwin may have needed Zimmerman's instruction to know that he could withhold L.S. from Plaintiff, but Plaintiff fails to allege that Sherwin and Zimmerman reached an understanding to achieve this result as part of a scheme to violate Plaintiff's rights.  The constitutional claims asserted via § 1983 against Sherwin are DISMISSED WITH PREJUDICE because Plaintiff failed to cure the identified deficiency regarding the absence of state action.

The allegations of state action regarding Boynton-Sherwin are even weaker.  Plaintiff alleges that Boynton-Sherwin fabricated her allegations against Plaintiff and used DCFS to deprive Plaintiff of custody over L.S., Second Am. Compl. 7, but there are no allegations that

---

[6] Citations to the First Amended Complaint use the page numbers generated by CM/ECF because the document is not paginated.

Boynton-Sherwin did so as part of an agreed upon scheme to deprive Plaintiff of her rights. Boynton-Sherwin and Sherwin needed the coercive power wielded by state officials to deprive Plaintiff of custody of L.S., but allegations that they used DCFS processes are not the same as allegations that they reached an agreement with state officials to deprive Plaintiff of her rights. *Cf. Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co–conspirator or a joint actor with the judge."); *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) ("[T]he mere act of furnishing information to law enforcement officers does not constitute joint activity in an unconstitutional arrest. . . . [And] the mere act of filing false police reports is not actionable under § 1983." (quotation marks omitted)).  Boynton-Sherwin did not become a state actor merely by reporting information to DCFS, even if that information was false or privileged.  Although Boynton-was newly added to the Second Amended Complaint, the Court declines to give Plaintiff an opportunity to replead any constitutional claims against her because Plaintiff was already on notice of the requirements for pleading state action by a private actor and failed to submit a sufficient pleading.  Therefore, the constitutional claims asserted via § 1983 against Boynton-Sherwin are also DISMISSED WITH PREJUDICE.

### b.  City of Abingdon's Direct Liability

Across many claims, Plaintiff seeks to assert that the City of Abingdon ("Abingdon") is directly liable for certain constitutional violations.  *E.g.*, Second Am. Compl. 20–22.  As established in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), municipalities may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  The Court previously dismissed

Plaintiff's *Monell* claim because "she ha[d] not identified the policies, practices, or customs that resulted in her constitutional injury."  Dec. 10, 2024 Order 9.  Plaintiff now alleges that: (1) Abingdon's police officers routinely engage in pretextual inventory searches; (2) police officers "were inadequately trained on conducting lawful inventory searches during traffic stops" and (3) Abingdon "failed to supervise or discipline its officers for unlawful conduct, fostering an environment that encouraged or condoned constitutional violations."  Second Am. Compl. 21.

Beginning with Plaintiff's first theory, Plaintiff's claim still falls short because it seeks to expand a single experience into a policy, practice, or custom without detailing any other instances of misconduct attributable to Abingdon's officials or employees.  *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance . . . ." (quotation marks omitted)); *Walker v. City of Chicago*, 596 F. Supp. 3d 1064, 1074 (N.D. Ill. 2022).  One negative encounter with a municipality's police force is insufficient to plausibly allege that the municipality's policies, practices, or customs were the cause of a constitutional violation.  Plaintiff's allegations regarding Shamblin—namely that Shamblin described the pretextual inventory search as "a trick" to be taught—could allow for an inference that improper impound searches were widespread and enjoyed some official approval. Second Am. Compl. 3.  But the issue is that Shamblin was allegedly employed by Berg's and ISP, not Abingdon.  *Id.* at 2, 4.  It would be implausible to conclude that Abingdon had a widespread practice of improper inventory searches based on the statements of an individual that was neither employed nor supervised by Abingdon.  Plaintiff makes no other factual allegations beyond her own experiences on August 27, 2022 to plausibly support her assertion that Abingdon failed to supervise or punish its officials for their misconduct.

Turning to Plaintiff's second and third theories, "[a] municipality will be held liable for the violation of an individual's constitutional rights for failure to train adequately its officers only when the inadequacy in training amounts to deliberate indifference to the rights of the individuals with whom the officers come into contact." *Jenkins v. Bartlett*, 487 F.3d 482, 492–93 (7th Cir. 2007). "Deliberate indifference exists [only] where the [municipality] (1) failed to provide adequate training in light of foreseeable consequences; or (2) failed to act in response to repeated complaints of constitutional violations by its officers." *Miranda v. County of Lake*, 900 F.3d 335, 345 (7th Cir. 2018) (quotation marks omitted). There are no allegations of repeated unlawful inventory searches or any allegations as to why Abingdon would have been on notice of a need to provide additional training. *See id.* ("[T]he defendant must have actual or constructive notice of a problem."). Likewise, to hold Abingdon liable for failure to supervise or discipline its officers, Plaintiff would need to plausibly allege that Abingdon was on notice of a problem and failed to take appropriate action. *See Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599–600 (7th Cir. 2019); *see also Spicer v. Geo Grp.*, No. 1:20-cv-02760-SEB-TAB, 2022 WL 3925098, at *4 (S.D. Ind. Aug. 31, 2022) ("A *Monell* failure-to-train or failure-to-supervise theory requires a showing that a corporate defendant had notice that gaps in its training or supervision would cause constitutional violations; in many cases, notice is shown with proof of a prior pattern of similar constitutional violations."). She has not done so.

Therefore, the § 1983 claim against Abingdon for a pattern of pretextual inventory searches is DISMISSED WITH PREJUDICE because Plaintiff failed to cure the previously identified deficiency in this *Monell* theory. For similar reasons, the Court finds that amendment of her new theories—failure to train or supervise—is futile. These theories were offered in lieu of factual allegations demonstrating a policy, practice, or custom, *i.e.*, incidents beyond her own

isolated experience.  But those allegations are necessary to support those theories as well.  As Plaintiff has not pointed to facts beyond her own August 27, 2022 traffic stop, those theories of *Monell* liability are also DISMISSED WITH PREJUDICE.

### c.  Eighth Amendment

In Count XXIX, Plaintiff alleges that Hayes, Owens, Shamblin, Zimmerman, and Lampley violated the Eighth Amendment.  Second Am. Compl. 54–55.  The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  Plaintiff faults Hayes, Owens, and Shamblin for the length of her detention on August 27, 2022, asserting that she was detained "5.5 hours for minor traffic violations, far exceeding any reasonable or justified timeframe."  *Id.* at 54.  Zimmerman and Lampley assertedly ran afoul of the Eighth Amendment via their threats to place L.S. in foster care and coercing Plaintiff into submitting to drug tests.  *Id.*  All five Defendants collectively violated the Eighth Amendment by "fabricating evidence" and withholding L.S. from Plaintiff.  *Id.* at 55.  These allegations do not plausibly support relief under the Eighth Amendment because Plaintiff was not a convicted prisoner at the time.  *See Ingraham v. Wright*, 430 U.S. 651, 664–71 (1977) (holding that the Eight Amendment applies only to convicted prisoners); *Ledford v. Rutledge*, NO. 1:17-CV-438-TLS, 2018 WL 4216820, at *10 (N.D. Ind. Sept. 4, 2018) ("As for the traffic stops, the Eighth Amendment's cruel and unusual punishment clause does not apply because it applies only to convicted prisoners." (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015)).  The Eighth Amendment is simply inapplicable.  Plaintiff's Eighth Amendment claims are DISMISSED WITH PREJUDICE because any amendment would be futile.

### d. Conspiracy to Deprive Civil Rights: 42 U.S.C § 1985(3)

In Count VII, Plaintiff alleges that all Defendants were members of a conspiracy to deprive her of her civil rights. Second Am. Compl. 18–20. 42 U.S.C. § 1985(3) prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). A plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). The second element requires that the defendants have acted with "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The Court previously dismissed this claim for failure to identify any class-based discriminatory animus. Dec. 10, 2024 Order 5–6.

Plaintiff's amended version of this claim fails to rectify this deficiency. She identifies "her perceived lifestyle, socioeconomic status, and personal appearance" as the relevant suspect classifications. Second Am. Compl. 20. Plaintiff's allegations regarding her unexplained appearance or lifestyle, let alone the perceptions thereof, are devoid of sufficient factual content—lifestyle and appearance are simply too ambiguous of terms to provide fair notice. *Cf. Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (alterations and quotation marks omitted)). Even the more straightforward allegation of discrimination on the basis of socioeconomic status is a nonstarter because the Supreme Court has long declined to recognize indigency as the basis of a suspect classification. *See Maher v.*

15

*Roe*, 432 U.S. 464, 471 (1977); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973); *cf. Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (finding that dismissal of § 1985(3) claim was appropriate because the plaintiff "failed to sufficiently allege such animus because status as a parolee is not considered a 'suspect class' for equal-protection purposes").

Moreover, Plaintiff needed to "at a minimum, allege (1) the parties to the conspiracy, (2) the general purpose of the conspiracy, and (3) the general time at which the conspiracy was formed." *Maglaya v. Kumiga*, No. 14-cv-3619, 2015 WL 4624884, at *12 (N.D. Ill. Aug. 3, 2015). Plaintiff's conclusory allegations do not identify when the conspiracy was formed nor when certain Defendants decided to join up. *See* Second Am. Compl. 20 ("The Defendants acted in concert with a shared understanding and mutual objective to deprive Plaintiff of her rights."). At best, she has alleged that some Defendants spoke with each other at unidentified times, but working in parallel towards the same goal is not the same as a conspiratorial agreement. *See Scott*, 107 F.4th at 758. Plaintiff's claim for conspiracy to deprive civil rights is DISMISSED WITH PREJUDICE because she failed to cure a previously identified deficiency.

### 2. State Law Claims: Property and Contract

#### a. Count X: Trespass to Chattels

In Count X, Plaintiff alleges that Berg's, Zimmerman, and Lampley are liable for trespass to chattels. Second Am. Compl. 23–24. "Trespass to personal property involves an injury to or interferences with possession of chattel, with or without physical force." *Zissu v. IH2 Prop. Ill., L.P.*, 157 F. Supp. 3d 797, 803 (N.D. Ill. 2016). "A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005) (quoting Restatement (Second) of Torts § 217 (Am. L. Inst. 1965)). Plaintiff alleges

that Berg's impounded her bus, charged excessive amounts for its recovery in violation of local

regulations, and refused to accept credit or debit card payment in violation of applicable

regulations.  Second Am. Compl. 24.  She alleges that Zimmerman took photos of her bus and its

contents after Berg's impounded the bus, but Lampley's role is unexplained.  *Id.*

The lack of factual allegations relating to Lampley requires that this claim be dismissed

as asserted against her.  The allegations related to Zimmerman are also insufficient to state a

claim because taking photographs does not injure or interfere with Plaintiff's right of possession

in the chattels, *i.e.*, photographing generally does not affect property.  *See Zissu*, 157 F. Supp. 3d

at 803; *cf. Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 416 (S.D.N.Y. 2018)

(noting that copying files from a hard drive without permission did not state a claim of trespass

to chattels under New York law because "there [wa]s no indication that the condition, quality or

value of the computer, its hard drive, or any of the information on the computer was diminished

as a result of defendants' duplication of the hard drive" (quotation marks omitted)).  Count X is

DISMISSED as against Zimmerman and Lampley.

### b.  Count XVIII: Conversion

In Count XVIII, Plaintiff alleges that Berg's, Sherwin, and Boynton-Sherwin are liable

for conversion.  Second Am. Compl. 35–36.  "The difference between [trespass to chattels and

conversion] is a matter of degree."  *Obi v. Chase Home Fin., LLC*, No. 10 C 3154, 2010 WL

4810609, at *4 (N.D. Ill. Nov. 19, 2010).  Conversion requires a plaintiff to show "that (1) [s]he

has a right to the property; (2) [s]he has an absolute and unconditional right to the immediate

possession of the property; (3) [s]he made a demand for possession; and (4) the defendant

wrongfully and without authorization assumed control, dominion, or ownership over the

property."  *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008) (quotation marks omitted).  As

17

against Berg's, Plaintiff repeats a condensed version of the allegations she levies in her trespass-to-chattels claim. Second Am. Compl. 35. Plaintiff alleges that Sherwin and Boyton-Sherwin took away items from L.S. that Plaintiff had given to him "with the intent of alienating L.S. from Plaintiff." *Id.* at 36.

The issue with Plaintiff's conversion claim against Boynton-Sherwin and Sherwin is that she alleges that she gave the at-issue items to L.S., *e.g.*, Second Am. Compl. 7, such that Plaintiff had no continuing right to possess them. *Cf., e.g.*, *In re Marriage of Romano*, 968 N.E.2d 115, 129 (Ill. App. Ct. 2012) (defining a "gift" as "a voluntary gratuitous transfer of property from donor to donee where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the done" (quotation marks omitted)); *id.* at 128 ("[A] transfer from a parent to a child is presumed to be a gift."). Plaintiff is thus unable to show that she had a right to the property and cannot maintain a claim for conversion regarding the same. Further, because she is proceeding *pro se*, she is unable to assert L.S.'s rights on his behalf. *See, e.g.*, *Foster v. Bd. of Educ. of City of Chi.*, 611 F. App'x 874, 877 (7th Cir. 2015) (collecting cases to demonstrate "that the rule prohibiting a nonlawyer from representing another person extends to a parent attempting to represent her minor child pro se"). Therefore, Count XVIII is DISMISSED as against Sherwin and Boynton-Sherwin.

### c. Count XXXVI: Breach of Implied Covenant of Good Faith and Fair Dealing

In Count XXXVI, Plaintiff alleges that Berg's and Zimmerman are liable for breaching an implied covenant of good faith and fair dealing. Second Am. Compl. 64–65. She asserts that Berg's and Zimmerman breached this covenant in an undescribed contract between Plaintiff and Berg's "to tow her bus." *Id.* Plaintiff acknowledges that Zimmerman was "not directly a party to the towing agreement" but asserts that she "acted in concert with Berg's." *Id.* at 65. This

18

claim fails outright because "Illinois law . . . does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing." *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 995 (N.D. Ill. 2019) (first citing *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126 (Ill. 2001); and then citing *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013)).

Cognizant that "[a] document filed *pro se* is to be liberally construed," *Erickson*, 551 U.S. at 94 (quotation marks omitted), the Court considers whether Plaintiff can state a breach of contract claim based on an alleged breach of the covenant of good faith and fair dealing. *See, e.g.*, *Kipnis v. Mandel Metals, Inc.*, 741 N.E.2d 1033, 1038 (Ill. App. Ct. 2000) ("A covenant of good faith and fair dealing is implied in every contract absent a provision that specifically states otherwise."). "The required elements of a breach of contract claim in Illinois are the standard ones of common law: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (quotation marks omitted). Far from alleging definite and certain terms, Plaintiff fails to allege any terms of the contract between herself and Berg's. Second Am. Compl. 64–65. The missing essential terms, including the price paid, of the alleged contract means that the Court cannot ascertain what the parties purportedly agreed to and therefore could not enforce such an agreement under Illinois law. *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 850 (7th Cir. 2007). Simply identifying the subject matter of the contract—"to tow her bus," Second Am. Compl. 65—is not sufficient. Finally, Plaintiff's acknowledgment that Zimmerman was not party to her contract with Berg's means that she cannot maintain a claim against Zimmerman for breaching that contract. Count XXXVI, construed as a breach-of-contract claim, is DISMISSED.

19

### 3.  State Law Claims: Tort

Beginning with a generally applicable issue, most of Plaintiff's tort claims asserted against entities must be dismissed because she fails to allege that those entities acted in their capacities as entities, as opposed to their agents acting.  Plaintiff previously asserted a claim for intentional infliction of emotional distress ("IIED") against DCFS, ISP, and Abingdon.  First Am. Compl. 7.  The Court dismissed these claims because Plaintiff failed to describe any of their conduct.  Dec. 10, 2024 Order 7–8.  Plaintiff's amended claims again fall short—there is still no factual content related to the entities' conduct as entities, as opposed to their employees' conduct.  Moreover, Plaintiff now asserts other claims to hold these entities vicariously liable for their agents' conduct, *see, e.g.*, Second Am. Compl. 65–67 (asserting a claim for "Vicarious Liability" against Berg's, DCFS, ISP, and Abingdon), such that construing Plaintiff's direct claims against the entities as indirect claims is unwarranted.

Because Plaintiff failed to rectify this previously identified deficiency, the following claims are DISMISSED WITH PREJUDICE: (1) Count XII: IIED as against DCFS, *id.* at 25–28; (2) Count XXI: Negligent Infliction of Emotional Distress ("NIED") as against DCFS, ISP, and Abingdon, *id.* at 39–41; (3) Count XXXIV: Reckless Infliction of Emotional Distress, as against DCFS, *id.* at 61–62; (4) Count XV: Defamation, as against DCFS, *id.* at 31–33; (5) Count XXII: Fraudulent Misrepresentation, as against DCFS, *id.* at 42–43; (6) Count XIV: False Imprisonment, as against DCFS, ISP, and Abingdon, *id.* at 30–31; (7) Count XXIII: Malicious Prosecution, as against DCFS, *id.* at 43–46; and (8) Count XXXIII: Invasion of Privacy, as against DCFS, *id.* at 59–60.  The Court now turns to issues with specific claims.

### a. Count XXXII: Intentional Interference with Contractual Relations

Count XXXII alleges that Sherwin and Boynton-Sherwin are liable for intentional interference with contractual relations.  Second Am. Compl. 58–59.  The tort of intentional interference with contractual relations requires sufficient allegations:

> (1) that a valid and enforceable contract existed between the plaintiff and another party, (2) that the defendant was aware of that contract relation, (3) that the defendant intentionally and unjustifiably induced a breach of the contract, (4) that there was a subsequent breach of the contract by the other party that was caused by the defendant's wrongful conduct, and (5) that the plaintiff suffered damages.

*L. Offs. of Charles Chejfec, LLC v. Franz*, 232 N.E.3d 1111, 1122 (Ill. App. Ct. 2023), *appeal denied*, 238 N.E.3d 314 (Ill. 2024).  Plaintiff alleges that Sherwin and Boynton-Sherwin "were fully aware of Plaintiff's legal and contractual rights to custody and visitation with her minor child, L.S.," yet they misused legal processes to obstruct those rights and gave false info to DCFS.  Second Am. Compl. 58–59.  Moreover, they allegedly withheld L.S. from Plaintiff, "[r]efus[ed] to comply with lawful agreements or orders, and influenc[ed] others to breach contractual arrangements related to Plaintiff's custodial and visitation rights."  *Id.* at 59.

To start, "Illinois courts generally do not respect private agreements affecting custody." *Martinez v. Cahue*, 826 F.3d 983, 991 (7th Cir. 2016) (citing *In re Marriage of Linta*, 18 N.E.3d 566, 570 (Ill. App. Ct. 2014)).  Such an agreement would need the force of a court order, and that order could be described as a contract between the mother and father.  *See In re Guardianship of J.O.*, 2025 IL App (4th) 241026-U, ¶ 123 ("The parenting plan is a contract between the mother and the father . . . ." (citing *In re Marriage of Coulter & Trinidad*, 976 N.E.2d 337, 341 (Ill. 2012)).  Any other agreement would not be a valid and enforceable contract and therefore could not support a claim for intentional interference with contractual relations.

21

Accordingly, in an attempt to construe this claim liberally, the Court considers whether the Second Amended Complaint plausibly states that either Sherwin or Boynton-Sherwin intentionally induced a breach of a custody order by the only party to the contract other than Plaintiff, *i.e.*, Sherwin.  Sherwin could not have induced himself to breach a custody order, and Plaintiff does not allege that Boynton-Sherwin was a party to any such order, so it is implausible that Sherwin intentionally induced Boynton-Sherwin to breach a valid contract with Plaintiff.

As for whether Boynton-Sherwin intentionally induced Sherwin to breach the terms of a custody agreement regarding L.S., there is simply not enough factual detail to find a plausible claim.  Plaintiff alleges that they "refus[ed] to comply with lawful agreements or orders," but fails to provide specifics.  Second Am. Compl. 59.  The closest Plaintiff gets is her description of litigation conduct in the summer of 2022—Plaintiff and L.S. had made extensive preparations for taking the bus to see the ocean, but "[i]n late July 2022, just months after being awarded joint parental responsibilities, . . . Sherwin filed a petition for an order of protection against Plaintiff." Second Am. Compl. 3.  She further alleges that "Sherwin had previously threatened to file for contempt and an order of protection if Plaintiff continued with her vacation plans."  *Id.*  Even assuming that seeking an order of protection was somehow a breach of an unspecific court-ordered agreement, the Second Amended Complaint does not speak at all to Boynton-Sherwin's role in or knowledge of this conduct, and thereby fails to plausibly allege that Boynton-Sherwin induced Sherwin to breach a contract with Plaintiff.  The Court closes this section by noting that this business-focused tort is a poor fit for a non-economic custody dispute.  Count XXXII: Intentional Interference with Contractual Relations is DISMISSED.

### b.  Torts Related to Plaintiff's Parental Relations

Across Counts XXVII, XVII, XIX, and XXV, Plaintiff seeks to assert multiple state-law torts related to various Defendants' interference with her relationship with L.S.  Count XXVII alleges that Sherwin and Boynton-Sherwin are liable for "Parental Alienation," Second Am. Compl. 28–30, Count XVII alleges that DCFS, Sherwin, Boynton-Sherwin, Zimmerman, and Lampley are liable for "Tortious Interference with Parental Rights," *id.* at 34–35, Count XIX alleges that the same Defendants as well as Barry are liable for "Intentional Interference with Custodial Relations," *id.* at 36–37, and finally Count XXV alleges that the same group of Defendants is liable for "Loss of Consortium," *id.* at 47–49.  The issue is that none of these are recognized, standalone causes of action under Illinois law.

"Illinois courts have declined to recognize tortious interference with custodial rights as a cause of action regardless of the damages claimed." *Hulsh v. Hulsh*, 243 N.E.3d 1055, 1059 (Ill. App. Ct. 2024), *appeal allowed*, 244 N.E.3d 272 (Ill. 2024).  The Illinois Supreme Court has also declined to recognize a claim for loss of consortium by parents "resulting from nonfatal injuries to a child." *Vitro v. Mihelcic*, 806 N.E.2d 632, 640 (Ill. 2004).  The Court declines to break new ground on these fronts.

Parental alienation is at least a recognized concept in the context of custody determinations under Illinois law, *see, e.g.*, *In re Marriage of Stegeman*, 2015 IL App (4th) 150396-U, ¶ 52 (discussing parental alienation in the context of considering modifications to a custody determination), but the Court has found no example of parental alienation as a standalone cause of action, let alone one that a federal court would have jurisdiction to entertain, *see generally Ankenbrandt v. Richards*, 504 U.S. 689 (1992) (discussing the domestic relations exception to a federal court's jurisdiction); *J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021)

(discussing abstention doctrines related to a child custody dispute).  The Court finds that these claims must be DISMISSED WITH PREJUDICE because amendment would be futile, either because the causes of action are nonexistent or because the Court would lack jurisdiction.

### c.  Torts Related to Emotional Distress

Count XII alleges that Hayes, Owens, Shamblin, Zimmerman, Lampley, Sherwin, Boynton-Sherwin, Barry, and Berg's are liable for IIED, Second Am. Compl. 25–28, Count XXI alleges that the same Defendants are liable for NIED, *id.* at 39–41, and Count XXXIV alleges that Zimmerman, Lampley, Sherwin, Boynton-Sherwin, Barry, and Berg's are liable for reckless infliction of emotional distress, *id.* at 61–62.  To assert an IIED claim under Illinois law, a plaintiff "must [allege] that (1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010).  Recklessness can support a claim of IIED in some circumstances, *Lopez Colunga v. Advoc. Health & Hosps. Corp.*, 232 N.E.3d 72, 78 (Ill. App. Ct. 2023), but the elements are different for allegations of NIED, *see Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 58 (Ill. 2016) ("Generally, to state a claim for negligent infliction of emotional distress, a plaintiff must allege the traditional elements of negligence: duty, breach, causation, and damages.").

The Court previously dismissed an IIED claim asserted against Berg's.  Plaintiff's allegation "that it authorized others to enter and search [her] bus while it was in the impound lot" was not sufficiently extreme and outrageous, necessitating dismissal.  Dec. 10, 2024 Order 10–11.  Plaintiff's amended claim against Berg's is based on the same allegation: that Berg's "allowed unauthorized access to [her] bus by Zimmerman and law enforcement."  Second Am.

24

Compl. 27.  The only additional conduct attributable to Berg's in the Second Amended

Complaint relates to its pricing and accepted methods of payment.  *Id.* at 24.  But questionable

pricing structures and stinginess related to accepted payment methods are not "so extreme as to

go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized

community" either.  *See Swearnigen-El*, 602 F.3d at 864 (quotation marks omitted).  The

emotional-distress torts asserted against Berg's are DISMISSED WITH PREJUDICE because

Plaintiff has failed to rectify this previously identified deficiency.

### d.  Claims Based Upon False Statements

Plaintiff asserts three different claims related to allegedly false statements: (1) Count XV

alleges that Sherwin, Boynton-Sherwin, Zimmerman, and Barry are liable for defamation,

Second Am. Compl. 31–33; (2) Count XXII alleges that Zimmerman, Lampley, Sherwin,

Boynton-Sherwin, and Barry are liable for fraudulent misrepresentation, *id.* at 42–43; and (3)

Count XXXV alleges that Sherwin, Boynton-Sherwin, Zimmerman, and Barry are liable for

defamation by implication, *id.* at 62–64.  The overarching issue with these claims is their lack of

factual specificity.  For example, both Sherwin and Boynton-Sherwin allegedly made "false and

defamatory statements to law enforcement, DCFS, and third parties, accusing Plaintiff of

criminal behavior, including drug use and theft, and claiming she was unfit as a parent."  *Id.* at

32.  "Although a plaintiff is not required to lay out the allegedly defamatory statements verbatim,

their substance must be pled 'with sufficient precision and particularity so as to permit initial

judicial review of [their] defamatory context' and 'so that the defendant may properly formulate

an answer and identify any potential defenses.'"  *Osundairo v. Geragos*, 447 F. Supp. 3d 727,

737 (N.D. Ill. 2020) (alteration in original) (quoting *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill.

2009)).  Simply setting forth "a summary of the types of statements" that were allegedly made is

insufficient.  *See Green*, 917 N.E.2d at 460.  Plaintiff's allegations are summaries, not assertions that particular statements were made and that their falsity was damaging to Plaintiff.  This lack of factual detail leads the Court to conclude that Counts XV and XXXV must be DISMISSED.

The non-specific nature of Plaintiff's allegations is even more problematic for her claim of fraudulent misrepresentation.  *See* Second Am. Compl. 42–43.  Defamation is subject to "the usual rules for notice pleading established by Rule 8."  *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003).  But fraudulent misrepresentation is held to a higher standard because Rule 9(b) provides that "a party who alleges fraud 'must state with particularity the circumstances constituting fraud.'"  *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 869 (N.D. Ill. 2022) (quoting Fed. R. Civ. P. 9(b)).  "Rule 9(b) requires that facts such as the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff be alleged in detail."  *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (quotation marks omitted).  Plaintiff needs to be more specific about when, where, and what was said to maintain her claim that she justifiably relied upon certain statements to her detriment.  Count XXII is also DISMISSED.

### e.  Count XIV: False Imprisonment

In Count XIV, Plaintiff alleges that Hayes, Shamblin, Owens, Sherwin, and Zimmerman are liable for false imprisonment.  Second Am. Compl. 30–31.  "The elements of a cause of action for false imprisonment are: (1) that the plaintiff was restrained or arrested by the defendant; and (2) that the defendant acted without reasonable grounds (*i.e.*, without probable cause) to believe that an offense was committed by the plaintiff."  *Grainger v. Harrah's Casino*, 18 N.E.3d 265, 276 (Ill. App. Ct. 2014).  Restraint refers to a limitation on "an individual's

personal liberty or freedom of locomotion." *Lopez v. Winchell's Donut House*, 466 N.E.2d 1309, 1311 (Ill. App. Ct. 1984). Plaintiff alleges that Zimmerman is liable because she "withheld Plaintiff's minor child, L.S., from [Plaintiff] for two weeks." Second Am. Compl. 30. This claim fails either because Plaintiff is seeking to assert L.S.'s rights (Zimmerman misused her authority to prevent L.S. from exercising his freedom of locomotion, *i.e.*, physical movement) or because Plaintiff does not allege that Zimmerman prevented her from exercising her own freedom of physical movement. Again, Plaintiff cannot assert L.S.'s rights as a *pro se* party. *Foster*, 611 F. App'x at 877. As to Sherwin, she alleges that he "acted in concert with Zimmerman to withhold L.S. from Plaintiff during this two-week period." Second Am. Compl. 31. This claim must be dismissed for similar reasons, in that no restraint on Plaintiff's physical movement is alleged. Count XIV for false imprisonment as asserted against Sherwin and Zimmerman is DISMISSED.

### f. Count XXIII: Abuse of Process

In Count XVI, Plaintiff alleges that Sherwin, Boynton-Sherwin, and Barry are liable for abuse of process. Second Am. Compl. 33–34. "Abuse of process requires (1) '[e]xistence of an ulterior purpose or motive' and (2) '[s]ome act in the use of the legal process not proper in the regular prosecution of the proceedings.'" *Leventhal v. Schenberg*, 917 F. Supp. 2d 837, 843 (N.D. Ill. 2013) (alterations in original) (quoting *Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 455 (Ill. App. Ct. 1972)). "The 'mere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process.'" *Id.* (quoting *Holiday Magic*, 282 N.E.2d at 456). The plaintiff must allege that the court's "process was used to accomplish some result that is beyond the purview of the process," such as an arrest, seizure of property, or fraudulent and malicious issuance of summons. *Kumar v. Bornstein*, 820 N.E.2d 1167, 1172–74

(Ill. App. Ct. 2004). "The elements are strictly construed, as the tort of abuse of process is not favored under Illinois law." *Id.* at 1173.

Plaintiff's allegations at best describe a malicious intent or motive in instituting proceedings; she fails to allege that Sherwin, Boynton-Sherwin, and Barry misused civil proceedings related to custody of L.S. to achieve some result that is not proper in the regular prosecution of such a custody dispute. That they resorted to the courts, even with the most ill of will, to try and prevent Plaintiff from enjoying custody over L.S. is not an abuse of this process—it is an entirely foreseeable and sometimes intended result of a process related to child custody. To the extent that Defendants' other alleged conduct—namely lying during these proceedings—was improper, the Court finds that this cause of action is needlessly duplicative of Plaintiff's other claims against these Defendants, such as defamation, *see* Second Am. Compl. 31–33, considering Illinois courts' instructions to strictly construe abuse of process, *see Kumar*, 820 N.E.2d at 1173. Count XVI is DISMISSED WITH PREJUDICE because amendment would be futile.

### g. Count XXIV: Civil Conspiracy

In Count XXIV, Plaintiff alleges that all Defendants have formed a conspiracy to deprive her of her rights. Second Am. Compl. 46–47. Civil conspiracy under Illinois law requires sufficient allegations of: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). In a similar vein to the Court's analysis of Plaintiff's claims that private actors became state actors

via an unspecified agreement for purposes of § 1983, the Court finds that Plaintiff's conclusory

allegations of a civil conspiracy are insufficient.  Count XXIV is functionally an unnecessary

umbrella claim which attempts to hold each Defendant liable for each other's allegedly tortious

conduct.  This attempt falls short because Plaintiff fails to allege the basic details of any such

agreement, such as when it was formed and when each Defendant joined the conspiracy.  *See*

*Borsellino*, 477 F.3d at 509.  Count XXIV is DISMISSED.

## CONCLUSION

Accordingly, Plaintiff Brandie M. Roberts's Motion to Appoint Counsel, ECF No. 19, is

DENIED WITHOUT PREJUDICE, and her Second Amended Complaint, ECF No. 14, is

DISMISSED IN PART.  The following claims are DISMISSED WITH PREJUDICE:

- Count I: Fourth Amendment, as against Berg's, DCFS, ISP, and Abingdon;
- Count II: Fourteenth Amendment Procedural Due Process, as against Sherwin, Boynton-Sherwin, Judge Andrew Doyle, and ISP;
- Count III: Fourteenth Amendment Substantive Due Process, as against DCFS, Sherwin, Boynton-Sherwin;
- Count IV: Fourteenth Amendment Equal Protection, as against DCFS, Sherwin, Boynton-Sherwin, ISP, and Abingdon;
- Count V: First Amendment, as against DCFS, Sherwin, Boynton-Sherwin;
- Count VI: Unlawful Detention, as against ISP and Abingdon;
- Count VII: Conspiracy to Deprive Civil Rights via 42 U.S.C. § 1985;
- Count VIII: Failure to Train or Supervise via *Monell*;
- Count IX: Deprivation of Property Without Due Process, as against Berg's, ISP, and Abingdon;
- Count XI: False Arrest, as against ISP and Abingdon;
- Count XII: IIED, as against DCFS and Berg's;
- Count XIV: False Imprisonment, as against DCFS, ISP, and Abingdon;
- Count XVI: Abuse of Process;
- Count XVII: Tortious Interference with Parental Rights;
- Count XIX: Intentional Interference with Custodial Relations;
- Count XXI: NIED, as against Berg's, DCFS, ISP, and Abingdon;
- Count XXIII: Malicious Prosecution, as against DCFS;
- Count XXV: Loss of Consortium;
- Count XXVII: Parental Alienation;
- Count XXVIII: Failure to Intervene as against Sherwin, Boynton-Sherwin, DCFS, ISP, Abingdon;

- Count XXIX: Eighth Amendment;
- Count XXXIII: Invasion of Privacy, as against DCFS;
- Count XXXIV: Reckless Infliction of Emotional Distress, as against DCFS and Berg's;

The following claims are DISMISSED:

- Count X: Trespass to Chattels, as against Zimmerman and Lampley;
- Count XIV: False Imprisonment, as against Sherwin and Zimmerman
- Count XV: Defamation
- Count XVIII: Conversion, as against Sherwin and Boynton-Sherwin
- Count XXII: Fraudulent Misrepresentation
- Count XXIV: Civil Conspiracy
- Count XXXII: Intentional Interference with Contractual Relations
- Count XXXV: Defamation by Implication
- Count XXXVI: construed as Breach of Contract

Only the following claims remain:

| Count | Defendants | Pages |
|---|---|---|
| Count I: Violation of Fourth Amendment Rights | Hayes, Owens, Shamblin, Zimmerman | 9–10 |
| Count II: Violation of Fourteenth Amendment Procedural Due Process | Hayes, Owens, Shamblin, Zimmerman, Lampley | 10–12 |
| Count III: Violation of Fourteenth Amendment Substantive Due Process | Zimmerman, Lampley | 13–14 |
| Count IV: Violation of Equal Protection Clause | Hayes, Owens, Shamblin, Zimmerman, Lampley | 14–16 |
| Count V: First Amendment Retaliation | Zimmerman, Lampley | 16–17 |
| Count VI: Unlawful Detention | Hayes, Owens, Shamblin | 17–18 |
| Count IX: Deprivation of Property Without Due Process | Hayes, Owens, Shamblin | 22–23 |
| Count X: Trespass to Chattels | Berg's | 23–24 |
| Count XI: False Arrest | Hayes, Owens, Shamblin | 24–25 |
| Count XII: IIED | Zimmerman, Lampley, Sherwin, Boynton-Sherwin, Hayes, Owens, Shamblin | 25–28 |
| Count XIV: False Imprisonment | Hayes, Owens, Shamblin | 30–31 |
| Count XVIII: Conversion | Berg's | 35–36 |
| Count XX: Negligence | Berg's, Zimmerman, Lampley, Sherwin, Boynton-Sherwin, Barry, Hayes, Owens, Shamblin, ISP, Abingdon | 38–39 |
| Count XXI: NIED | Zimmerman, Lampley, Sherwin, Boynton-Sherwin, Hayes, Owens, Shamblin | 39–41 |

| Count XXIII: Malicious Prosecution | Zimmerman, Lampley, Sherwin, Boynton-Sherwin, Barry | 43–46 |
|---|---|---|
| Count XXVI: Breach of Duty of Care | Berg's, DCFS, Zimmerman, Lampley | 49–50 |
| Count XXVII: Violation of the First Amendment | Zimmerman, Lampley | 50–52 |
| Count XXVIII: Failure to Intervene | Hayes, Owens, Shamblin, Zimmerman, Lampley | 52–54 |
| Count XXX: Respondeat Superior | DCFS | 55–56 |
| Count XXXI: Negligent Supervision | Berg's, DCFS, ISP, Abingdon | 56–58 |
| Count XXXIII: Invasion of Privacy | Berg's, Zimmerman, Boynton-Sherwin | 59–60 |
| Count XXXIV: Reckless Infliction of Emotional Distress | Zimmerman, Lampley, Sherwin, Boynton-Sherwin, Barry | 61–62 |
| Count XXXVII: Vicarious Liability | Berg's, DCFS, ISP, Abingdon | 65–67 |

If she desires, Plaintiff may, by May 29, 2025, seek the Court's leave to file another amended complaint which omits the claims that the Court has dismissed with prejudice and, if possible, addresses the deficiencies in the state-law claims that were not dismissed with prejudice. The proposed amended complaint should be attached as an exhibit to the motion for leave to file. Any motion for leave to file a proposed amended complaint that attempts to reassert claims that have been dismissed with prejudice will be summarily denied for failure to follow court orders. The Court will provide further directions regarding service after either the time for Plaintiff to seek the Court's leave to file an amended complaint has passed or the Court has resolved Plaintiff's request for such leave.

Entered this 8th day of May, 2025.

s/ Sara Darrow

SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE